The document below is hereby signed.

Dated: January 4, 2013.



_S. Martin Teel Jr._
_____
**S. Martin Teel, Jr.**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| DEBRA M. STEVENSON, | ) | Case No. 06-00306 |
| | ) | (Chapter 13) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| FIRST AMERICAN TITLE | ) | |
| INSURANCE COMPANY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 07-10005 |
| | ) | |
| DEBRA M. STEVENSON and | ) | **Not for Publication in** |
| EUGENE SMITH, | ) | **West's Bankruptcy Reporter** |
| | ) | |
| Defendants. | ) | |

MEMORANDUM DECISION RE THE CLAIMS RAISED BY THE
DEFENDANTS IN THEIR SECOND MOTION FOR SUMMARY JUDGMENT
AND RE THE PLAINTIFFS' MOTION TO STRIKE THOSE CLAIMS
(A MOTION TITLED AS A MOTION TO STRIKE AFFIRMATIVE DEFENSES)

Fremont Investment & Loan made a loan ("the Fremont Loan")

to Debra M. Stevenson secured by a deed of trust executed only by

Stevenson, and not by her son, Eugene Smith, on real property

owned by Stevenson and Smith.  The plaintiffs, which include

Fremont's successor in interest on the Fremont Loan, have

asserted claims seeking to enforce the Fremont Loan against the

real property.  In their second motion for summary judgment, the

defendants belatedly asserted defenses to the Fremont Loan under

state and federal lending laws that they had failed to raise via

an answer.  Only Stevenson was an obligor on the Fremont Loan,

and only she had standing to attack the Fremont Loan obligation

based on the state and federal lending laws designed for her

protection.  Stevenson could have asserted the same claims of

invalidity by objecting to the proof of claim that had been filed

regarding the Fremont Loan, and that would have been a core

proceeding under 28 U.S.C. § 157(b)(1).  Her assertion of those

claims of invalidity via the defendants' second motion for

summary judgment similarly presented a core proceeding going to

enforceability of Fremont's deed of trust against Stevenson's

interest in the real property and resolution of the debtor-

creditor relationship.  See 28 U.S.C. § 157(b)(2)(K)

("determinations of the validity, extent, or priority of liens")

and § 157(b)(2)(O) ("adjustment of the debtor-creditor . . .

relationship").[1]  Accordingly, it is unnecessary to issue

proposed findings of fact and conclusions of law to the district

---

[1]  In contrast, the claims asserted by the plaintiffs with
respect to Smith's interest in the real property (*e.g.*, for
equitable subrogation to a lien on Smith's property interest),
although affecting the administration of the case, are only
related to the bankruptcy case and are non-core in nature.  The
bankruptcy court is authorized to hear and make proposed findings
of fact and conclusions of law in such non-core "related to"
proceedings. 28 U.S.C. § 157(c)(1).

2

court as to those challenges, and the defendants may appeal the
court's orders disposing of those challenges.  In the event,
however, that I lack such authority, this decision constitutes my
proposed findings of fact and conclusions of law with respect to
the claims regarding violations of state and federal lending
laws.

I

Debra M. Stevenson is the debtor in the case under chapter
13 of the Bankruptcy Code (11 U.S.C.) within which this adversary
proceeding is pending.  Eugene Smith is her son.  At issue in
this adversary proceeding is a loan that was extended by Fremont
Investment & Loan ("Fremont") to Stevenson, who used the Fremont
Loan to refinance a pre-existing loan secured by real property
(known as 3721 Grant Place, NE, Washington, D.C.) owned by Smith
and Stevenson as joint tenants (the "Fremont Loan").  First
American was Fremont's title insurer in the transaction.  Smith
did not execute the promissory note or the deed of trust for the
Fremont Loan, thus giving rise to the issue of whether the
Fremont lien extends to the entire property or the Fremont Loan
can otherwise be enforced against the entire property.

The proceeds of the Fremont Loan were used, in part, to
satisfy the lien position previously held by Wells Fargo Bank,
N.A., whose lien had encumbered both Stevenson's and Smith's
interest in the property.  The plaintiffs have sought a

declaration that Smith should be treated as obligated on the
Fremont Loan and his interest in the property subjected to the
Fremont Loan deed of trust, and, alternatively, that the holder
of Fremont's rights is entitled to be equitably subrogated to
Wells Fargo's lien to the extent that the Fremont Loan proceeds
paid off the Wells Fargo obligation.  The defendants sought,
belatedly, to show that the Fremont Loan is unenforceable based
on violations of federal and state lending laws.

II

The district court has subject matter jurisdiction over this
adversary proceeding pursuant 28 U.S.C. § 1334(b), and has
referred the adversary proceeding to this court pursuant to 28
U.S.C. § 157(a).  Wells Fargo Bank, N.A. is administering the
loan for Fremont's successor,[2] and sought relief from the
automatic stay to proceed with foreclosure against the real
property based on Stevenson's failure to make postpetition
monthly mortgage payments.  The extent of the lien that could be
enforced against the property will have an impact on the amount
of debt that Stevenson would owe after a foreclosure, and thus
the amount of any deficiency claim that could be asserted as an
unsecured claim against the estate.  Moreover, the defendants

---

[2]  Wells Fargo's service in this capacity is apparently
unrelated to the fact that it also happened to be the prior
lienholder whose loan was satisfied through the Fremont
Refinance.

4

have raised challenges to the enforceability of the Fremont Loan.

Wells Fargo needed to know the extent of the lien, and the

enforceability of the underlying Fremont Loan secured by the

lien, before proceeding with a foreclosure sale.  A foreclosure

sale could have impacted Stevenson's ability to continue to make

plan payments.  The claims asserted are at the very least

"related to" the bankruptcy case within the meaning of 28 U.S.C.

§ 1334(b).  The challenges to the validity of the Fremont Loan

that was asserted by way of a proof of claim against Stevenson in

the main bankruptcy case "arise in" the bankruptcy case within

the meaning of § 1334(b).  Adjudication of the validity of the

Fremont Loan affects the creditor-debtor relationship and is a

core proceeding that this court is authorized to decide.  28

U.S.C. § 157(b)(2)(K) ("determinations of the validity, extent,

or priority of liens") and § 157(b)(2)(O) ("adjustment of the

debtor-creditor . . . relationship").

### III

The court has issued a *Memorandum Decision re Cross-Motions
for Summary Judgment* (Dkt. No. 82), concluding that Fremont's

successor is not entitled to treat Smith as personally obligated

on the debt but that equitable subrogation is appropriate if such

relief is being pursued by a party with standing to do so, and

depending on the disposition of the claims raised by the

defendants regarding the alleged unenforceability of the Fremont

Loan based on lending law violations.  The issue of standing, and the issue of the propriety of the conclusions set forth in the *Memorandum Decision re Cross-Motions for Summary Judgment* are being addressed by way of proposed findings of fact and conclusions of law for consideration by the district court.  This decision addresses the lending law challenges to the validity of the Fremont Loan.

IV

First American commenced this adversary proceeding by filing a complaint against Stevenson and Smith as the defendants.  On March 20, 2007, the defendants filed a motion to dismiss or in the alternative for summary judgment (Dkt. No. 8).  The defendants' motion was denied in its entirety on May 2, 2007 (Dkt. No. 20).  The defendants failed, however, as required by Fed. R. Bankr. P. 7012(a), to file an answer to the complaint within 10 days after the denial of that motion.[3]  Instead, several months later, on October 17, 2007, after the existing

---

[3]  Rule 7012(a) was amended in 2009 to provide that an answer is due 14 days after the denial of a motion to dismiss.

deadline for completing discovery had expired,[4] the defendants filed their second motion for summary judgment (Dkt. Nos. 38 & 39), in which the defendants claimed that:

> (1) the Fremont Loan violated the Home Loan Protection Act;

> (2) the Fremont Loan violated the D.C. Consumer Protection Procedures Act;

> (3) the Fremont Loan violated the Truth in Lending Act; and

> (4) the Fremont Loan is improper because Fremont is not licensed in accordance with D.C. Code 26-1101, *et seq.*

The defendants asserted that the Fremont Loan was void based on those violations, and defended against the claim for equitable subrogation on the basis that there was no enforceable obligation to assert against the property via equitable subrogation. First American filed a motion to strike those claims, characterizing them as affirmative defenses, and contending that the defendants were required, but failed, to raise the affirmative defenses in a timely-filed answer to the complaint (Dkt. No. 52).

---

[4] On May 2, 2007, the court entered a scheduling order that, among other things, set August 31, 2007, as the deadline for completing discovery (Dkt. No. 22). On August 31, 2007, the parties filed a joint motion to extend the discovery deadline to September 11, 2007 (Dkt. No. 31), and the court granted that motion on September 28, 2007 (Dkt. No. 34). With limited exceptions of no applicability here, the discovery deadline was not further extended.

The court, as well, proceeded in its oral rulings to view the challenges to the Fremont Loan as affirmative defenses.  The challenges could have been treated as counterclaims for a declaration of invalidity of the Fremont Loan--the same as objections to the Fremont Loan claim--which, if granted, would have mooted the claims for equitable subrogation.  However, the balance of this decision will, for ease of discussion, treat the claims of invalidity as though they were affirmative defenses because the parties treated them as such.  Either way, the belated assertion of the challenges was untimely.

The plaintiffs were entitled to a ruling adjudicating whether they were entitled to equitable subrogation to enforce whatever debt might be owed by Stevenson pursuant to the Fremont Loan.  Their right to a ruling ought not have been delayed based on the defendants' belatedly attempting to inject the challenges to the validity of the Fremont Loan into the adversary proceeding.

The court held a hearing to address the defendants' second motion for summary judgment and the plaintiffs' motion to strike on March 18, 2008, which carried over to and was completed on March 31, 2008.  At the time of the hearing, more than a year after the filing of this adversary proceeding and almost eleven months after the court had denied the defendants' original motion to dismiss, the defendants still had not filed an answer to the

complaint.

At the hearing, the court determined that most of the
defendants' affirmative defenses should be stricken as either
legally deficient or untimely raised.  As to Stevenson's
remaining affirmative defenses (*e.g.*, those relating to the
reasonableness and bona fides of fees charged), the court found
that the defendants had earlier raised those defenses in such a
fashion that the plaintiffs were on adequate notice of the
defendants' intention to rely upon them.[5]  The court also found,
however, that the defendants' failure timely and properly to
assert those affirmative defenses had put First American to the
unfair burden and expense of having to bring a motion to strike,
and the court conditioned the filing of an answer out of time on
the defendants' paying First American's attorney's fees of
$1,260.

First American's motion to strike the defendants'
affirmative defenses on the basis that no timely answer had been
filed was akin to a motion for default judgment that would bar
the assertion of the affirmative defenses.  The case law in the
D.C. Circuit holds that a court should allow an answer to be
filed out of time so long as there is not substantial prejudice.

---

[5]  Although the defendants failed properly to raise their
affirmative defenses in a formal answer, as long as the defense
was flagged early in the proceeding, even if not in a formal
answer, the court found that the case law leans in favor of
allowing the defendants to plead that affirmative defense.

One of the prejudices here is that the plaintiff was put to the task of moving to strike because no answer was filed, and had to respond to papers filed by the defendants that did not clearly articulate the basis for their challenges to the Fremont Loan obligation.  When a motion for default judgment is filed and the plaintiff has incurred attorney's fees in pursuing that motion, the court can condition the denial of the motion for default judgment (or a vacating of a granting of the motion) on the defendants' paying the attorney's fees incurred by the plaintiff in pursuing the motion for default judgment. *See Thorpe v. Thorpe*, 364 F.2d 692, 694 (D.C. Cir. 1966).  The appropriate remedy here, at least as to those claims (called affirmative defenses by both parties) that were in some fashion pled in earlier papers (such as the contention that certain charges were "not bona fide or were unreasonable") was to require that the plaintiffs' attorney's fees be paid as a condition to allowing the affirmative defenses to be raised out of time.

Accordingly, instead of granting the motion to strike the affirmative defenses, the court determined that, while the defendants should be granted leave to file an answer out of time to assert their potentially meritorious and adequately flagged affirmative defenses, the filing of that answer would be conditioned upon (1) the defendants' filing of the answer within 15 days after entry of the order granting leave, and (2) upon

10

first tendering payment to First American for attorney's fees in the amount of $1,260.  The order memorializing that ruling (*Order Granting Leave to File Answer Contingent Upon Payment to Plaintiff of Attorney's Fees* (Dkt. No. 96)) was not entered until April 14, 2008, thus setting a deadline of April 29, 2008, for the defendants to file an answer.

In the midst of the two hearings in March 2008 addressing the motion to strike the defendants' affirmative defenses, the defendants filed on March 24, 2008, a further motion to dismiss (Dkt. No. 87), asserting that First American lacked standing to pursue the adversary proceeding.  Rather than paying First American's attorney's fees and filing an answer by the deadline of April 29, 2008, the defendants instead filed on April 21, 2008 a motion[6] for an extension of time to file an answer pending the court's adjudication of the defendants' new motion to dismiss. By orders of May 8, 2008 (Dkt. Nos. 113 to 115), the court denied the motion to dismiss; granted First American leave to amend the complaint to add additional plaintiffs; and denied the defendants' motion for an extension of time, but allowed the defendants a brief extension until May 16, 2008, to comply with the *Order Granting Leave to File Answer Contingent Upon Payment to Plaintiff of Attorney's Fees* (Dkt. No. 96).  The court

---

[6] Dkt. No. 102, later amended on April 23, 2008 by Dkt. No. 107 to include signatures.

explained:

> The court has denied the defendants' motion to dismiss,
> and the court previously found that the plaintiff has
> already been prejudiced by the defendants' failure to
> timely file an answer.  The plaintiff has filed a motion
> to file an amended complaint and the court is granting
> that motion.  It nevertheless makes sense to require the
> defendants to answer the original complaint, as the
> pleading of their defenses is so long overdue, and the
> amended complaint is only for purposes of adding
> additional plaintiffs as real parties in interest.

*Order Denying Defendants' Request for an Extension of Time to File*

*Answer* (Dkt. No. 113) at 2.

On May 17, 2008, the defendants filed a motion for

reconsideration (Dkt. No. 121), asking the court to permit the

filing of an answer without conditioning that right upon payment

of attorney's fees, but they did not contend that they were

unable to make the payment.  On June 30, 2008, First American

filed an amended complaint in which HSBC Bank USA, N.A., as

Trustee for SG Mortgage Securities Trust 2006- FRE l and Wells

Fargo were added as plaintiffs.  At a hearing of July 30, 2008

(of which Dkt. No. 174 is the transcript), the court issued an

oral ruling that the motion for reconsideration should be denied

and that partial default judgment should be granted.  The

defendants having failed timely to file an answer, and having

failed to comply with the court's order making the filing of an

answer subject to time limitations and contingent on payment of

First American's attorney's fees, the court reasoned, an order of

partial default judgment should be entered directing that the

12

only remaining affirmative defense that the defendants would be
permitted to assert as to the amended complaint was that the
added parties are not real parties in interest, a defense that
was only applicable to the amended complaint and that could not
have validly been asserted as to the original complaint.[7]  The
plaintiffs were entitled to have their claim regarding equitable
subrogation adjudicated without the delay that would be
engendered by allowing long belated assertions of the challenges
to the Fremont Loan obligation.

The defendants do not contend that they were unable to pay
the $1,260 in plaintiffs' attorneys fees that they were required
to pay as a condition to filing an answer.  Their adamant failure
to make that payment and to file an answer by the deadline set by
the court frustrated the prompt resolution of this adversary
proceeding.

V

For the sake of completeness, and to set forth those
defenses that were rejected as a matter of law, the following
explains more fully the court's rulings regarding the defendants'
affirmative defenses (other than the real parties in interest
defense), the motion to strike those defenses, and the

---

[7]  On November 14, 2008, the court entered an *Order Denying
Defendants' Motion For Reconsideration of Court's Order Denying
Defendants' Motion for Leave to File an Answer* (Dkt. No. 202) and
an *Order of Partial Default Judgment* (Dkt. No. 201), consistent
with the court's oral ruling.

defendants' requests to file an answer out of time.  As noted
previously, on May 2, 2007, the court denied the defendants'
initial motion to dismiss and set a discovery deadline that was
later extended to September 11, 2007.  No answer was filed within
10 days as required by Fed. R. Bankr. P. 7012(a).  On October 17,
2007, the defendants filed their second motion for summary
judgment (Dkt. Nos. 38 & 39), in which they raised, as previously
noted, the following defenses:

   a.   The Fremont Loan violated the Home Loan Protection Act.

   b.   The Fremont Loan violated the D.C. Consumer Protection
        Procedures Act.

   c.   The Fremont Loan violated the Truth in Lending Act.

   d.   Pursuant to D.C. Code 26-1101 *et seq.*, the Fremont Loan
        is improper because Fremont is not licensed.

The court initially struck those defenses of which First American
had not been given fair notice, dismissed those defenses that
failed as a matter of law, and conditioned the assertion of the
remainder of those defenses upon (1) the defendants' filing of
the answer within 15 days after entry of the order granting
leave, and (2) the defendants' first tendering payment to First
American for attorney's fees in the amount of $1,260.  When the
defendants failed timely to pay the $1,260 and file an answer,
they forfeited all of their affirmative defenses (other than the
affirmative defense regarding whether any of the plaintiffs is
the holder of the Fremont Loan's promissory note).

14

In more detail, the affirmative defenses were ruled upon as follows.

> **A.   The Defendants' Challenge Based on the D.C. Home
>        Loan Protection Act is Stricken**

In their second motion for summary judgment, the defendants assert that the Fremont Loan violated the D.C. Home Loan Protection Act.  The court finds that this defense should be stricken as not properly pled.  The defendants failed, prior to the close of discovery, to disclose to the plaintiffs their intent to assert a defense arising under the D.C. Home Loan Protection Act or the factual basis for the possible assertion of such a defense.  Not only did the defendants not affirmatively volunteer the information, they failed to assert the defense even when confronted with interrogatories and deposition questions tailored to elicit such information.  Specifically:

Interrogatory Number 21:

> State all facts supporting your allegation, if any, that the Fremont Loan was a predatory loan under the Home Loan Protection Act of 2002 (D.C. Code §§ 26-1151.01, et seq.).

Smith's Answer:

> Defendants object to this interrogatory on the grounds that it calls for a legal conclusion. Without waiving any right to object to this interrogatory, Defendant Smith provides the following response:

> Defendants have not made any such arguments.  I am unaware of the definition of what constitutes a predatory loan under D.C. law[;]

Smith's Answers to Interrogatories, dated Sept. 11, 2007, attached as Exhibit 1 to Plaintiffs' Motion to Strike.

Stevenson's Answer:

Defendants object to this interrogatory on the grounds that it calls for a legal conclusion. Without waiving any right to object to this interrogatory, Defendant Stevenson provides the following response:

Defendants have not made any such arguments.  I am unaware of the definition of what constitutes a predatory loan under D.C. law[;]

Stevenson's Answers to Interrogatories, dated Sept. 11, 2007, attached as Exhibit 2 to Plaintiffs' Motion to Strike.

(addressed at pages 6-8 of motion to strike).  Furthermore,

defendant Smith failed to provide any information relating to his

possible reliance on this defense at an August 28, 2007

deposition:

[Counsel for Plaintiff]: All right, Please give me concise statement of facts which support your contention, if any, that the loan is violative of any predatory lending or other lending guidelines?

[Defendant Smith]: You're asking me for my legal theories.

[Counsel for Plaintiff] I'm asking you for a concise statement of the facts.

[Counsel for Plaintiff]: Would you read the question back, please?

(Whereupon the record was read.)

[Smith] Well, in your question it implies what my legal theories are.

Based on the foregoing, the court finds that the defendants

16

failed, prior to the close of discovery, properly to disclose

this defense to the plaintiffs and failed to provide to the

plaintiffs the factual basis for asserting this defense.[8]

Accordingly, this defense is stricken as untimely raised.

> B.   The Defendants' D.C. Consumer Protection
> Procedures Act Defense is Stricken in Part and
> Otherwise Forfeited

In their second motion for summary judgment, the defendants

assert that the Fremont Loan violated the D.C. Consumer

---

[8] The court rejects the defendants' argument that, at the time of the deposition, they were unaware that they might have a defense arising under this statute. Although Mr. Smith is apparently an attorney, *See* Exhibit 3 to Opp. To Def's Motion to File Motion Beyond Scheduling Order Deadline,(Dkt. Nos. 44 & 45) (Smith testified that he is an attorney with the U.S. Commodity Futures Trading Commission), during the course of the hearing of July 30, 2008, he repeatedly relied upon his status as a pro se litigant to justify his failure timely to identify and assert certain defenses. As stated by the court during the March 18, 2008 hearing, although Mr. Smith is entitled to proceed pro se, in doing so he takes the risk that his lack of expertise will result in a forfeiture of defenses not timely or properly asserted. The court likewise rejects the argument that the plaintiffs were adequately informed of the defendants' intent to assert this defense by virtue of a pre-litigation settlement letter, in which the defendants stated that they would be asserting their rights under the lending laws. The letter did not spell out the basis upon which the defendants would assert a defense under the D.C. Home Loan Protection Act, and it was thus inadequate to place the plaintiffs on notice of the basis upon which the defendants might assert a defense under the D.C. Home Loan Protection Act in this proceeding. Finally, the court rejects the defendants' argument that the defense must be allowed because defenses can properly be raised at the summary judgment stage. Although this may sometimes be permissible, in the instant proceeding, where discovery has closed prior to the defendants' assertion of the defense in question, it would be unfair and prejudicial to the plaintiffs to permit this late-filed defense.

Protection Procedures Act, D.C. Code § 28-3904.  The plaintiffs ask the court to strike this defense on the grounds that it was not asserted in the defendants' original motion to dismiss, the defendants provided inadequate answers in response to allegations probing such a defense, and the assertion of the defense in the second motion for summary judgment constitutes unfair surprise. The court partially grants the motion to strike with respect to this affirmative defense.

The court finds that the defendants did not timely raise this defense in an answer, and they did not raise this defense in their motion to dismiss.  During the course of discovery, however, the plaintiffs propounded the following interrogatory inquiring about the basis for any Consumer Protection Procedures Act violation the defendants might allege, and subject to a limited objection to the interrogatory, the defendants provided a two-part response:

> INTERROGATORY NO. 22: State all facts supporting your allegation, if any, that the terms of the Freemont[sic] Loan, the manner in which it was closed, or the manner in which it was serviced violated the Consumer Protection Procedures Act (D.C. Code §§ 28-3901, et seq.).
>
> Smith's Answer: Defendants object to this interrogatory on the grounds that it calls for a legal conclusion. Defendants also object on the grounds that the interrogatory is vague and overly broad.  Without waiving any right to object to this interrogatory, Defendant Smith provides the following response:
>
> > 1.   Fremont failed to make material disclosures, including but not limited to, failure to

18

provide copies of loan documents to Defendant
Stevenson until November 2006.

    2.    Fremont attempted to enforce a loan that
Defendant Stevenson could not afford to pay
back.

The defendants did not disclose the basis upon which they thought

the D.C. Consumer Protection Procedures Act was violated other

than in this answer to interrogatory.

    (1)  To the extent the D.C. Consumer Protection Procedures
Act defense is based upon the adequacy of disclosures,
the defendants have forfeited this defense.

The first basis upon which the defendants claimed the Act

was violated goes to the adequacy of disclosures.  The defendants

concede that if there was adequate disclosure under the Truth in

Lending Act, then their disclosure-related defense under the D.C.

Consumer Protection Procedures Act must fail as well.  At the

hearing, the court deferred ruling on this aspect of the

defendants' D.C. Consumer Protection Procedures Act claim, but

did not strike the defense.  Instead, as with the claims

regarding disclosures under TILA, the court permitted the

defendants to assert the defense in an answer filed out of time.

The filing of such an answer was subject to court-imposed

conditions, which the defendants failed to satisfy.  Accordingly,

although the court did not initially strike this aspect of the

defendants' D.C. Consumer Protection Procedures Act defense, by

failing to comply with this court's order conditioning the filing

of an answer, the defendants have forfeited the right to assert

this defense.

> (2)   Allegation that Fremont attempted to enforce a loan
> that it knew Stevenson could not afford to repay does
> not adequately state a D.C. Consumer Protection
> Procedures Act defense and is stricken accordingly.

The second basis upon which the defendants asserted in their

interrogatory response a violation of the D.C. Consumer

Protection Procedures Act is that Fremont attempted to enforce a

loan that it knew Stevenson could not afford to pay back.  The

provision in question is D.C. Code § 28-3904(r), which provides,

in pertinent part:

> It shall be a violation of this chapter, whether or not any
> consumer is in fact misled, deceived or damaged thereby, for
> any person to: . . .
>
> > (r)   make or enforce unconscionable terms or provisions
> > of sales or leases; in applying this subsection,
> > consideration shall be given to the following, and
> > other factors:
> >
> > > (1)   knowledge by the person at the time credit
> > > sales are consummated that there was
> > > no reasonable probability of payment in full of
> > > the obligation by the consumer[.]

Although it is a violation of the D.C. statute to enforce

unconscionable terms arising from knowledge by the lender that

there is no reasonable probability of payment in full on the

obligation incurred, that is not what the defendants pled in

their answer to interrogatories.  The defendants only pled that

Fremont attempted to enforce the loan that defendant Stevenson

could not afford to pay back.  There is nothing in that

allegation about Fremont entering into the loan knowing that

20

Stevenson could not afford to pay it back.  It is not unusual for a lender to seek enforcement of a loan, only to find that the obligor is unable to pay, and that alone does not constitute a violation of the D.C Consumer Protection Procedures Act.  The defendants have not alleged any facts demonstrating that Fremont had knowledge of the inability of Stevenson to pay back the loan as part of their answer to the interrogatory, and the defendants are not entitled to pursue this affirmative defense any further. The affirmative defense that the Consumer Protection Procedures Act was violated based upon knowledge that Stevenson could not pay back the loan is stricken.

C.   Summary Judgment is Granted in Favor of the Plaintiffs as to Certain TILA Defenses and the Remaining TILA Defenses are Stricken or Forfeited

The defendants, in their second motion for summary judgment, assert several specific violations of TILA.  They contend: (1) a hazard insurance charge was imposed on Stevenson at settlement and that charge was a finance charge that Fremont failed to disclose, in violation of TILA; (2) a $655 insurance binder fee was either unreasonable or non-bona fide, and thus should have been disclosed as a finance charge; (3) an abstract title search for $380 and the title examination fee of $640 were not disclosed [as finance charges] and therefore were unreasonable; (4) a charge to pay Verizon was not disclosed as a finance charge; (5)

21

failure to provide an accurate HUD-1, which constituted a failure to disclose a finance charge and the amount financed; and (6) Stevenson did not receive two copies of the right to cancel.

During discovery, the plaintiffs propounded the following interrogatory:

> Interrogatory No. 17: Give a concise statement of facts that support your contention, if any, that Debra Stevenson validly rescinded the Freemont [sic] Loan on December 15, 2006 pursuant to 15 U.S.C. § 1635.

> Defendants object to this interrogatory on the grounds that it calls for a legal conclusion. Without waiving any right to object to this interrogatory, Defendant Smith provides the following response:

> 1.    Defendant Stevenson received foreclosure notices in August 2006.

> 2.    Defendant Stevenson did not receive copies of the Notice of Right to Cancel.

> 3.    The finance charges were not properly disclosed and understated by more than $35.

> 4.    The amount financed was not properly disclosed.

> 5.    Defendant Stevenson mailed a letter to Fremont in December 2006 providing her notice of rescinding the Fremont loan.

Smith's Answers to Interrogatories, Exhibit 1 to Motion to Strike, at 8-9. *See also* Stevenson's Answers to Interrogatories, Exhibit 2 to Motion to Strike, at 8-9. Also relating to the defendants' potential TILA defenses, the following exchange took place at Smith's deposition.

> [Counsel for the Plaintiff]: And now your mother seeks to rescind her obligations to Fremont; is

22

that right?

[Defendant Smith]: She's rescinding her loan to
Fremont because of violations of Federal and D.C.
law.

[Counsel for Plaintiff]: What are those
violations?

[Defendant Smith]: I'm not willing to speak about
our current case and what our legal theories are
at this deposition.

*See* Smith Deposition, Exhibit 3 to plaintiff's motion to strike,

at 52.

(1)  The plaintiffs are entitled to summary judgment with
respect to the defendants' claim that the charge
relating to hazard insurance was an improper finance
charge.

In their second motion for summary judgment, the defendants

allege that Stevenson is entitled to rescission of the loan under

TILA because, *inter alia*, a charge for hazard insurance was

imposed on Stevenson at settlement and that charge was a finance

charge that Fremont failed properly to disclose in violation of

TILA.  The defendants failed timely to raise this defense, and it

could be stricken on that basis.  Moreover, the defendants have

failed to demonstrate that the charge was anything other than a

premium payment, which is not a finance charge required to be

disclosed under the Truth in Lending Act.

The defendants rely on *Bynum v. Equitable Morg. Grp.*, 2005

WL 818619 (April 7, 2005 D.D.C.), for the proposition that the

hazard insurance charge was not bona fide or reasonable because

23

it was illegal under the MLBA, D.C. Code § 26-1115(b), which prohibits a lender from requiring the escrow of hazard insurance if the borrower has equity worth more than 20% of the property's fair market value.  The property having been appraised at $180,000, and the Fremont Loan having been in the amount of $135,000, Smith argues that under D.C. Code § 26-1115(b), Fremont could not lawfully require an escrow for hazard insurance, and, as such, the charge relating to hazard insurance should have been disclosed as a finance charge.

D.C. Code § 26-1115(b), however, addresses the escrowing of insurance, and it was undisputed in *Bynum* that the charge in question was a hazard insurance <u>escrow</u>.  Here, however, the defendants have not established that this was an escrow payment as opposed to a premium payment being made to the insurance company.  As noted in *Bynum*, "[p]oints and fees generally include: (1) all finance charges; (2) compensation paid to mortgage brokers; and (3) costs listed in 15 U.S.C. § 1605(e) 'unless the charge is reasonable, the creditor receives no direct or indirect compensation, and the charge is paid to a third party unaffiliated with the creditor.'  15 U.S.C. § 1602(aa)(4); 12 C.F.R. § 226.32(b)(1)."  *Bynum*, 2005 WL 818619, at *7.  This is just another way of saying that if the payment is simply a premium being paid to the insurance company, it is not a fee.

At the March 18, 2008 hearing, the court asked the

24

defendants to point to evidence supporting their contention that the hazard insurance payment was an escrow payment rather than a premium payment.  In response, Smith directed the court to the closing agent's (PSS Title's) list of disbursements to be made at settlement.  The court, however, found that the closing agent's brief holding of funds in anticipation of disbursement at settlement is distinguishable from an escrow that the lender takes for its own purposes, for the eventuality that the lender may need to pay for hazard insurance in the future.  At issue here is simply a payment of the premium, and the closing sheet identifies the funds that the closing agent is to disburse in accordance with the HUD-1 statement.  It does not reflect that the funds were to be held in reserve.  The defendants have not pointed to any evidence, other than a line entry on the HUD-1 closing statement, to support their contention that this was anything other than a payment for an insurance premium then due.

The defendants, in their answer to interrogatories, indicated that the failure to disclose finance charges was a basis for a claim to rescission, but they failed to indicate what were the finance charges that they thought were not properly disclosed.  When asked about Stevenson's right to rescind on deposition, the defendant Smith said he was not willing to speak about this particular aspect of the case.  On deposition Smith was unwilling to disclose what it was that gave rise to the

25

alleged right to rescind, and the plaintiff has not been given proper notice before the close of discovery of the specific finance charge that the defendants say was not properly disclosed.

The defendants first revealed their contention that the hazard insurance charge was an undisclosed finance charge in their second motion for summary judgment.  To determine the validity of this defense, it was important to ascertain whether this charge related to an insurance premium being paid or a hazard insurance escrow.  The defendants have not demonstrated that the charge was anything other than the payment of a premium, and it would have been unfair to require the plaintiffs to address this alleged hazard insurance escrow when they were not given a fair opportunity to take discovery on the issue.  Had the defendants timely disclosed their contention that the hazard insurance payment was a finance charge that was not properly disclosed, the plaintiffs could have taken discovery of the closing agent as to the nature of the line item relating to hazard insurance, to whom it was to be paid, and whether it was a premium or an escrow to be paid to the lender.

Moreover, the entry relating to hazard insurance was reported on line 903 of the HUD-1 statement, which, according to regulations issued by the Department of Housing and Urban Development, and quoted on pages 10-11 of the plaintiffs'

26

opposition to the defendants' second motion for summary judgment,
is used to record hazard insurance premiums paid at the time of
settlement, whereas the 1000-series is used to record amounts
collected by the lender to be held in reserve.   Specifically,

> Lines 901-905.  This series is used to record the items
> which the Lender requires (but which are not
> necessarily paid to the lender, i.e., FHA Mortgage
> Insurance Premium) to be paid at the time of
> settlement, other than reserves collected by the Lender
> and recorded in the 1000 series.

> Line 903 is used for hazard insurance premiums which
> the lender requires to be paid at the time of
> settlement (except reserves collected by the lender and
> recorded in the 1000 series)

> Lines 1000-1008.  This series is used for amounts
> collected by the Lender from the Borrower and held in
> an account for the future payment of obligations listed
> as they fall due.  Include the time period (number of
> months) and the monthly assessment.  In many
> jurisdictions this is referred to as an "escrow",
> "impound", or "trust" account.  In addition to these
> items listed, some Lenders may require reserves for
> flood insurance, condominium owners' association
> assessments, etc.

*See* Appendix A to part 3500 of the Code of Federal Regulations
"instructions for Completing HUD-1 . . . ."

All of the evidence points toward this being the payment of
a hazard insurance premium and not a hazard insurance reserve,
and that distinguishes this case from *Bynum*.  As already noted,
in that case, the court quoted from TILA as amended by HOEPA
stating that "[p]oints and fees generally include: (1) all
finance charges; (2) compensation paid to mortgage brokers; and

(3) costs listed in 15 U.S.C. § 1605(e) 'unless the charge is reasonable, the creditor receives no direct or indirect compensation, and the charge is paid to a third party unaffiliated with the creditor.'  15 U.S.C. § 1602(aa)(4); 12 C.F.R. § 226.32(b)(1)." *Bynum*, 2005 WL 818619, at *7.  The statutory language suggests that this hazard insurance premium was not a fee within the meaning of TILA.

This is an issue that should have been flagged early on by the defendants by way of an answer and in discovery they should have specifically disclosed what it was that they contend was not accurately disclosed.  On the merits as well, the plaintiffs are entitled to summary judgment in their favor because this is an affirmative defense and the defendants bear the burden of proof, and their second motion for summary judgment shows no basis upon which the court could conclude at trial that this was a fee that should have been disclosed under the Truth in Lending Act.

The plaintiffs have moved for summary judgment in their favor and the court has said it will grant summary judgment in favor of the plaintiffs unless the defendants are able to show that they have a valid affirmative defense.  The defendants filed their second motion for summary judgment attempting to show that they have proper defenses.  To the extent the defendants' second motion for summary judgment is incorporated into the defendants' opposition to the plaintiffs' motion for summary judgment, it

28

fails to set forth an adequate basis for finding that there was a failure to disclose with respect to the hazard insurance charge. And therefore, there is no basis for rescission based upon this hazard insurance premium charge.

    D.    The Defendants Forfeited the Right to Assert TILA Defenses Based Upon the Reasonableness and Bona <u>Fides of the Real Estate Fees Charged</u>

    (1)    The defendants have forfeited the defense that the $655 binder fee was unreasonable.

In their second motion for summary judgment, the defendants challenge the reasonableness of real estate fees charged. The first charge alleged to be unreasonable is the binder fee of $655.00. It should have been disclosed as a finance charge only if it was either non-bona fide or unreasonable, and the defendants say it was both. Exhibit Y suggests that there was a movement around of fees to different categories in order to possibly keep the annual percentage rate the same. There is a $655 amount that was previously $65. Exhibit Y caused the court concern. The exhibit was not, however, flagged with a great deal of specificity in the defendants' second motion for summary judgment such that the plaintiffs would have been on notice of what evidence the defendants were relying on in making their argument. Likewise, although the allegation of unreasonableness was clearly stated in the defendants' papers, the evidence presented was insufficient to warrant granting summary judgment

29

in favor of the defendants on this issue.  The court determined
that the defense ought not be stricken because it had been
flagged in earlier proceedings in the adversary proceeding, and
the defendants, upon filing an answer, ought to be given a chance
to present evidence showing that the fees are unreasonable.  The
court conditioned the assertion of this defense upon the filing
of an answer subject to court-imposed conditions.  The defendants
having failed to satisfy those conditions, however, the
defendants have forfeited this defense.

> (2)  The defendants' defense based upon the assertion that
> the abstract title search and title examination fees
> were unreasonable is rejected.

The defendants also object to the $380 abstract title search
and the $640 title examination fee.  It is the defendants'
position that these fees were not disclosed and were therefore
unreasonable.  The fact that the fees were not disclosed does not
make them unreasonable, and there is only an obligation under
TILA to disclose them if they were unreasonable.  The court
rejects this contention that real estate related fees were
unreasonable.

> (3)  The payment of Stevenson's telephone bill was not a
> finance charge that was required to be disclosed, and
> the plaintiffs are entitled to summary judgment on this
> issue.

The defendants allege that a payment to Verizon should have
been disclosed as a finance charge.  The fee for ($1,300 or
$1,121), a pre-existing, although disputed, debt owed by

30

Stevenson to Verizon, was paid on the HUD-1.  Stevenson disputed

the fee claimed by Verizon and, after settlement, Smith contends

that the defendants communicated directly with Verizon regarding

this disputed charge and Verizon refunded the money to Stevenson.

Defendant Smith contends that this was a finance charge and was

required to be disclosed as a finance charge.  The court

concludes that this charge was a pre-existing obligation and by

definition was not a cost of the transaction.  Where there is an

outstanding obligation to a pre-existing creditor other than the

lender, and the lender as a condition to lending requires that

the borrower bring her outstanding debt current, that is not a

finance charge because that obligation was already owed, before

the transaction was entered into, to the pre-existing creditor.

It does not affect the borrower's balance sheet.  The borrower

was obligated to that pre-existing creditor before entering into

the loan transaction, and by paying off the obligation with the

loan proceeds, the borrower is no worse off than she was

previously.  *See Mitchell v. Beneficial Loan & Thrift Co.*, 463

F.3d 793, 796 (8th Cir. 2006) ("The phone bill here was not

imposed as an incident to the extension of credit.  It is an

amount financed, not a charge incident to the extension of

credit.  It would be payable in a comparable cash transaction,

which excludes it from the finance charge under HOEPA.  *See* 15

U.S.C. § 1605(a).  Accordingly, the district court correctly

31

determined that Beneficial's non-payment of the phone bill is not part of points and fees, and does not trigger HOEPA's additional disclosure requirements."); *Mayfield v. Vanguard Sav. & Loan Ass'n*, 710 F. Supp. 143, 148 (E.D. Pa. 1989) ("the money advanced to discharge plaintiff's indebtedness on the two preexisting mortgages and for the water and sewer bills was as surely delivered to plaintiff as if defendant had delivered such amount payable to plaintiff and plaintiff, in turn, had endorsed it over to pay her bills.").

> (4) The defense that there was a failure to provide an accurate HUD-1 is stricken, except to the extent the defense was intended to challenge whether the fees charged were bona fide, and to the extent it was intended to challenge whether the fees charged were bona fide, the defense is forfeited.

The defendants contend that there was a failure to provide an accurate HUD-1 and they contend that this failure constituted a failure to disclose the finance charge and the amount financed and was a material violation of TILA that entitles the borrower to rescind the loan, citing 15 U.S.C. § 1635(a) and (f), 15 U.S.C. § 1602(u). To quote the defendants' memorandum in support of the defendants' second motion for summary judgment, the defendants contend that "Fremont failed to disclose the proper finance charge and amount financed by failing to provide Stevenson with a true and accurate HUD-1 statement."

The paper in which the HUD-1 discrepancies are discussed is the defendants' memorandum in support of the defendants' second

motion for summary judgment, and it flags the issue as a failure

to provide an accurate HUD-1 and the contention that the HUD-1

provided to Stevenson at closing was materially different than

the certified HUD-1 statement that purported to reflect the

actual settlement fees and charges.  The deficiency in this

defense is that it is not tied in to the actual TILA disclosure

statement that was given to Stevenson.  Without a showing that

the disclosure statement is inaccurate, it is not a valid

defense.  The plaintiffs should not have to guess at what is the

actual theory not clearly articulated by the defendants of why

there is a TILA disclosure violation.  The existence of

inconsistent HUD-1 statements does not carry the day.  The

defendants failed to raise this in an answer.  They could be

deemed to have forfeited the defense by not raising it in an

answer, and they belatedly raised it in a memorandum of law in

support of their second motion for summary judgment.  But when

they did finally assert this defense, they did not include

evidence that the actual TILA disclosure statement was

inaccurate.  The courts do allow an affirmative defense to be

raised belatedly even if it is not asserted in an answer if it

was flagged early on in the case, but here it was not.  All we

have here is a statement that the HUD-1 statements were

inconsistent.  The defendants bear the burden of proof on their

affirmative defense, and as to the inconsistent HUD-1 statements,

they simply have not pled enough facts to show the existence of a

valid affirmative defense, and this defense is stricken

accordingly.  To the extent the defense was intended to challenge

the bona fides of the fees charged, the court found it

appropriate to permit the defendants to assert the defense in an

answer, the filing of which was subject to certain court-imposed

conditions.  The defendants failed to comply with this court's

order conditioning the defendants' right to file such an answer,

and as such, to the extent the defense as to the inconsistent

HUD-1 statements is not already stricken, it is forfeited.

> (5)  The defense based upon Stevenson's assertion that she
> did not receive two copies of the right to cancel after
> the closing is forfeited.

Stevenson alleges that she did not receive two copies of the

right to cancel after the closing.  The plaintiffs, however, have

presented a notice of the right to cancel that bears Stevenson's

signature, and that recites that Stevenson received two copies of

the notice on December 9, 2005.  The defendants' affidavit (Dkt.

No. 41, Defendants' Exhibit E, Declaration of Debra M.

Stevenson), at paragraph 14, states that she did not receive the

notice of right to cancel.  The question then is whether it is

the plaintiffs' burden at this juncture to rebut the defendants'

affidavit.  The statute creates a rebuttable presumption that the

signed document was received.  All we have to rebut that

presumption is paragraph 14 of Stevenson's affidavit, which

states "After the closing of the Fremont Refinance, I did not

receive copies of any of the Fremont loan documents that she

signed at the settlement . . . ."  Although the court initially

determined to strike this defense, it ultimately found it

appropriate to permit the assertion of the defense in an answer,

subject to certain court-imposed conditions.  The defendants

having failed to comply with this court's order conditioning the

defendants' right to file an answer out of time, the defendants

forfeited the right to assert this defense.

> E.  The Court Rules in Favor of the Plaintiffs on the
>     Defendants' Asserted Defense that the Fremont Loan
>     is Improper Because Fremont is not Licensed Under
>     D.C. Code § 26-1101 *et seq.*

The defendants allege that the Fremont Loan is improper

because Fremont is not licensed under D.C. Code § 26-1101 *et seq*.

The statute, however, provides an exemption from the licensing

requirement for

> (1) Any bank, trust company, savings bank, savings and
> loan association, or credit union incorporated or
> chartered under the laws of the United States, any
> state or territory of the United States, or the
> District, and any other financial institution
> incorporated or chartered under the laws of the
> District or of the United States, that accepts deposits
> and is regulated under this title, and subsidiaries and
> affiliates of such entities which maintain their
> principal office or a branch office in the District of
> Columbia and in which the lender, subsidiary, or
> affiliate is subject to the general supervision or
> regulation of, or subject to audit or examination by, a
> regulatory body or agency of the United States, any
> state or territory of the United States, or the
> District[.]

D.C. Code § 26-1102(1).  The defendants contend in their second motion for summary judgment that Fremont is an industrial loan company or industrial bank and not a bank as contemplated by the statute's exemption to the licensing requirement.  The statute, however, does not distinguish between industrial banks and other banks.  The court rules in favor of the plaintiffs on this issue.

VI

In light of the foregoing rulings, the defendants have forfeited all of their affirmative defenses (other than the defense that none of the plaintiffs is the holder of the Fremont Loan's promissory note), and, for reasons discussed in part V, many of the affirmative defenses are rejected as a matter of law.

VII

A judgment follows that decrees that the challenges to the validity of the Fremont Loan are dismissed, some of them on the merits, and some because the defendants injected them into the proceeding at too late a stage, without leave to file an answer asserting them.

[Signed and dated above.]

Copies to : All counsel of record.