The document below is hereby signed.

Dated: January 4, 2013.



_____

**S. Martin Teel, Jr.**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                                    )
                                         )
DEBRA M. STEVENSON,                      )    Case No. 06-00306
                                         )    (Chapter 13)
                    Debtor.              )
_____         )
                                         )
FIRST AMERICAN TITLE                     )
INSURANCE COMPANY, *et al.*,             )
                                         )
                    Plaintiffs,          )
                                         )    Adversary Proceeding No.
            v.                           )    07-10005
                                         )
DEBRA M. STEVENSON, *et al.*,            )    **Not for Publication in**
                                         )    **West's Bankruptcy Reporter.**
                    Defendants.          )

MEMORANDUM DECISION SUBMITTING
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
RECOMMENDING THAT THE DISTRICT COURT GRANT SUMMARY JUDGMENT IN
<u>FAVOR OF THE PLAINTIFFS ON THEIR CLAIM FOR EQUITABLE SUBROGATION</u>

    The following constitutes the bankruptcy court's proposed
findings of fact and conclusions of law under Fed. R. Bankr. P.
9033 as to the issues in this adversary proceeding other than the
defendants' claims that the loan at issue is void based on

alleged violations of state and federal lending laws.[1]

I

First American Title Insurance Company commenced this action

by filing a two-count complaint in the bankruptcy court against

the debtor, Debra M. Stevenson, and her son, Eugene Smith.

Fremont Investment & Loan made a loan ("the Fremont Loan") to

Stevenson in order to refinance a pre-existing loan made by Wells

Fargo Bank, NA, evidenced by a promissory note ("the Wells Fargo

Note"), and secured by a lien, a security interest granted by a

deed of trust ("the Wells Fargo Deed of Trust"), on real property

owned by Smith and Stevenson as joint tenants.  Stevenson

executed a promissory note ("the Fremont Note") promising to

---

[1] The defendants' lending law claims asserted defenses to
Stevenson's obligations under the loan, and amounted to an
objection to the proof of claim filed in the main bankruptcy
case, an objection seeking a declaration that the claims under
the loan are void.  The adjudication of such challenges to a
creditor's claim in the bankruptcy case fall within the
bankruptcy court's authority to decide core proceedings.  The
right to challenge the loan belongs to Stevenson as the obligor
on the loan.  Adjudication of disputes affecting the creditor-
debtor relationship are a core proceeding that this court is
authorized to decide.  28 U.S.C. § 157(b)(2)(K) ("determinations
of the validity, extent, or priority of liens") and
§ 157(b)(2)(O) ("adjustment of the debtor-creditor . . .
relationship").

In contrast, the claims asserted by the plaintiffs (*e.g.*,
for equitable subrogation to a lien on Smith's property
interest), although affecting the administration of the case, are
only related to the bankruptcy case and are non-core in nature.
The bankruptcy court is authorized to hear and make proposed
findings of fact and conclusions of law in such non-core "related
to" proceedings.  28 U.S.C. § 157(c)(1).

repay the Fremont Loan.   Stevenson granted Fremont a lien, a
security interest granted pursuant to a deed of trust ("the
Fremont Deed of Trust"), against the real property to secure the
Fremont Loan, but Smith did not execute that Fremont Deed of
Trust, thus making the Fremont Loan unenforceable against Smith's
interest in the real property unless, for example, the holder of
the Fremont Loan is entitled to be equitably subrogated to the
Wells Fargo Deed of Trust.   First American was Fremont's title
insurer in the transaction, and has an obvious interest in the
Fremont Loan being collectible from both Stevenson's and Smith's
interests in the property.

 First American's complaint has since been amended.   The
amended complaint added as plaintiffs HSBC Bank USA, National
Association, as Trustee for SG Mortgage Securities Trust 2006-FRE
1[2] (as Fremont's successor in interest and as First American's
insured lienholder), and Wells Fargo (as the bank that services
the Fremont Loan).[3]   The amended complaint also struck an
erroneous allegation in the original complaint that Wells Fargo
was Fremont's successor in interest and First American's insured

---

 [2]  References in this decision to HSBC mean HSBC in its role
of serving as the trustee of the Trust.   As will be seen, at one
point there was a mistaken belief in this proceeding that HSBC
Bank USA, N.A., in a non-trustee role, was the holder of the
Fremont Note.

 [3]  Coincidentally, Wells Fargo was also the entity whose
loan was satisfied out of the Fremont Loan proceeds, but it has
not been added as a plaintiff in that capacity.

lienholder.  The amended complaint made no other material changes
to the original complaint.  This court adopts the bankruptcy
court's rulings permitting the filing of the amended complaint.

Count I of the amended complaint (like the original
complaint) seeks (1) a declaration that Smith is obligated on the
loan, and (2) reformation of the Fremont Deed of Trust to include
Smith's signature.  Count II of the amended complaint (like the
original complaint) seeks to have Fremont's successor in interest
equitably subrogated to the lien position previously held by
Wells Fargo, whose loan was satisfied through the Fremont Loan
and whose related deed of trust had encumbered both Stevenson's
and Smith's interest in the property.

II

The court has subject matter jurisdiction under 28 U.S.C.
§ 1334(b), tested as of the filing of the adversary proceeding
complaint, as the disposition of the proceeding could have an
impact on the administration of the case.  Wells Fargo is
administering the loan for Fremont's successor,[4] and sought
relief from the automatic stay in the debtor's bankruptcy case
(Case No. 06-00306) to proceed with foreclosure against the real
property based on Stevenson's failure to make postpetition

---

[4]  Wells Fargo's service in this capacity is apparently
unrelated to the fact that it also happened to be the prior
lienholder whose loan was satisfied through the Fremont
Refinance.

monthly mortgage payments.  The extent of the lien that could be enforced against the property will have an impact on the amount of debt that Stevenson would owe after a foreclosure, and thus the amount of any deficiency claim that could be asserted as an unsecured claim against the estate.  Moreover, the defendants have raised challenges to the enforceability of the Fremont Loan. Wells Fargo needed to know the extent of the lien, and the enforceability of the underlying Fremont Loan against the property, before it could proceed with a foreclosure sale.  A foreclosure sale could have impacted Stevenson's ability to continue to make plan payments.

III

The parties filed cross-motions for summary judgment in the bankruptcy court, and on January 29, 2008, the bankruptcy court held a hearing to address those motions, and later issued a *Memorandum Decision re Cross-Motions for Summary Judgment* (Dkt. No. 82).

A.

As to Count I of the original complaint, the bankruptcy court ruled that the defendants are entitled to summary judgment and this court adopts the bankruptcy court's *Memorandum Decision re Cross-Motions for Summary Judgment* in that regard as disposing of the identical Count I of the amended complaint.

B.

As to Count Two of the original complaint, the bankruptcy court ruled in its *Memorandum Decision re Cross-Motions for Summary Judgment* that Fremont's successor in interest is entitled to equitable subrogation, unless the court later determined that the Fremont Loan is altogether void based upon allegations that Fremont violated various federal and state lending laws.   Again, this court adopts the bankruptcy court's *Memorandum Decision re Cross-Motions for Summary Judgment* as a ruling on the cross-motions for summary judgment with respect to Count II of the amended complaint, with the clarification that the Fremont successor in interest that is entitled to equitable subrogation is HSBC, not Wells Fargo.[5]   There remain various issues:

- The issue of alleged violations of lending laws is addressed in part IV, below.

- The issue of whether the plaintiffs are real parties in interest is addressed in parts V and VI, below.

- The attempt of the defendants to file a "Reply" in support of their authorized supplemental opposition to the plaintiffs' motion for summary judgment on the real

---

[5]   As noted previously, the original complaint erroneously treated Wells Fargo, the prior lienholder whose loan was satisfied through the Fremont Loan, as Fremont's successor in interest.   Instead, Wells Fargo services the Fremont Loan on behalf of HSBC, the current holder of the Fremont Note, and Fremont's successor in interest.

6

parties in interest question is addressed in part VII,
below.

- The defendants' claim that the Fremont Deed of Trust is
  avoidable is addressed in part VIII, below.

- Finally, the appropriate rate of interest to apply
  pursuant to equitable subrogation is addressed in part
  IX, below.

The defendants' memorandum in the bankruptcy court on December
31, 2012 (Dkt. No. 238) after the bankruptcy court asked for
briefing on the appropriate rate of interest to apply pursuant to
equitable subrogation, went beyond the interest rate question and
tried to get in one last lick attacking the bankruptcy court's
*Memorandum Decision re Cross-Motions for Summary Judgment*
regarding equitable subrogation.  The defendants' memorandum
cites to an observation in *Bynum v. Equitable Mortg. Grp.*, 2005
WL 818619, at *12 (D.D.C. Apr. 7, 2005), that the doctrine of
equitable subrogation:

> appears to apply when priority of competing liens is at
> issue, as opposed to situations where no lien exists.
> *See e.g., Eastern Sav. Bank, FSB v. Pappas*, 829 A.2d 953
> (D.C. App. 2003); *Restatement (Third) of Property*, § 7.6
> (equitable subrogation exists to determine priority of
> liens).

But *Bynum* declined to decide that question (as the Truth in
Lending Act governed available remedies).  In any event,
*Restatement (Third) of Property* § 7.6, the section of the
*Restatement* treatise cited by *Bynum*, includes an Illustration No.

7

24 that is directly on point and supports this court's conclusion

that equitable subrogation is appropriate by stating:

> 24.  Blackacre is owned by A and B, subject to a mortgage
> held by Mortgagee-1. A and B are tenants in common, and
> under applicable law are equally responsible with respect
> to one another to pay the debt secured by the mortgage,
> so that either who pays is entitled to contribution from
> the other for one-half of the payment. A refuses to pay
> any part of the debt, and Mortgagee-1 institutes
> foreclosure proceedings. B, learning of these facts,
> approaches Mortgagee-2 and obtains a loan the proceeds of
> which are used to fully discharge Mortgagee-1's mortgage.
> B gives Mortgagee-2 a mortgage on B's interest in
> Blackacre, but A refuses to execute a mortgage on A's
> interest. Mortgagee-2 is subrogated to Mortgagee-1's
> rights, and may enforce the first mortgage against A's
> interest in Blackacre.

Accordingly, *Bynum* furnishes no basis to reject the analysis set

forth in the bankruptcy court's *Memorandum Decision re Cross-

Motions for Summary Judgment* regarding equitable subrogation.

IV

The bankruptcy court later rejected the defendants'

contentions that were based on alleged violations of lending

laws, and ruled that those contentions gave rise to a core

proceeding.  To the extent that the bankruptcy court was correct

that it had authority to decide the contentions that were based

on alleged violations of lending laws, this court affirms the

bankruptcy court's order rejecting those contentions.  To the

extent that the bankruptcy court was in error in treating itself

as authorized to adjudicate those contentions, and they were

required to be decided de novo by the district court, this court

8

adopts the bankruptcy court's rulings as to those contentions as its own.

V

The defendants contend that the added plaintiffs in this action, HSBC and Wells Fargo, as well as the original plaintiff, First American, are not the real parties in interest to this dispute.[6]  The plaintiffs filed a motion for summary judgment in the bankruptcy court seeking resolution of this issue (Dkt. No.

_____

[6]  Because this defense as to HSBC and Wells Fargo arises solely out of the first amended complaint, and was not forfeited or otherwise barred in connection with the defendants' failure timely to file an answer to the original complaint, the defendants are permitted to pursue this defense on the merits. The plaintiffs argue that the court's prior order limiting the defenses available to the defendants bars the defendants from raising the real party in interest defense as to First American. Rather than striking it as an unavailable defense, however, the court will address it on the merits.  As discussed below, the court finds that First American is a real party in interest to this dispute.

176).[7]  After thorough briefing, and arguments heard at a

November 12, 2008 hearing in the bankruptcy court, the real

parties in interest dispute was narrowed to a question of whether

either Wells Fargo or HSBC can demonstrate an enforceable

interest in the Fremont Note.  For the reasons that follow, the

court concludes that HSBC is the current holder of the note and

thus a real party in interest.[8]  Wells Fargo, as the servicer of

---

[7]  Following a November 12, 2008 hearing, the bankruptcy
court issued a scheduling order permitting additional limited
discovery and briefing to address the real parties in interest
issue (Dkt. No. 217).  The defendants had previously sought to
strike the affidavit of Amy Viers, and related exhibits, filed by
the plaintiffs in support of their summary judgment motion
addressing the real parties in interest issue.  The defendants
complained that the documents offered by the plaintiffs as
exhibits to the motion should have been produced through
discovery earlier in this proceeding.  The bankruptcy court
denied the motion to strike on the grounds that any failure to
disclose documents on the part of the plaintiff was unintentional
and not in bad faith, and the interim order permitting additional
discovery on the real parties in interest issue eliminated any
hardship to the defendants arising from any delay in the
plaintiffs' disclosures (Dkt. No. 219).   This court adopts the
bankruptcy court's ruling in that regard.

[8]  The party with the right to enforce the note is not only
a real party in interest, it is also a necessary party to this
proceeding.  Otherwise, *res judicata* would not bar the non-party
entity who actually possesses enforcement rights from later re-
litigating the same issues addressed in this proceeding.

that note, is also a real party in interest.[9]

### A.   Time for Testing Real Party in Interest Status

In their papers, the defendants repeatedly contend that the issue is whether any of the plaintiffs had an enforceable interest in the note as of the commencement of the adversary proceeding.  Federal Rule of Civil Procedure 17(a)(3), however, provides that:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.  After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

The Rule provides that the action will proceed as if it had been originally commenced by the real party in interest, but it does not limit relation back to situations in which either the original plaintiff or the substituted plaintiff was the real party in interest as of the commencement of the action.  For purposes of Rule 17, it is sufficient for the plaintiffs to show that they currently have an interest in the note in order to

---

[9]  First American as a real party in interest, however, is somewhat different.  Unlike Wells Fargo and HSBC, First American does not claim an enforceable interest in the note.  It has, however, demonstrated (as discussed in part VI, below) that, regardless of which entity actually has an enforceable interest in the note, First American, as title insurer, will ultimately bear some of the financial consequences if it is determined that equitable subrogation does not apply.

proceed as the named plaintiffs in this proceeding.

There are, however, cases in which it may be necessary to establish that a substituted party was the real party in interest as of the commencement of the case. For example, in the *In re Foreclosure Cases*, 2007 WL 3232430 (N.D. Ohio Oct. 31, 2007), a federal district judge dismissed a group of foreclosure actions that were being prosecuted in federal court based upon diversity jurisdiction. The judge found that the plaintiffs lacked standing because they failed to prove that they were entitled to enforce the relevant promissory notes as of the date of the commencement of the action. The *In re Foreclosure Cases* are distinguishable from the instant case because the plaintiffs here are not relying on diversity jurisdiction to prosecute their claims.

B.   The Viers Affidavits

In support of their motion for summary judgment on the real parties in interest issue, the plaintiffs have submitted three affidavits of Amy Viers, a Litigation Representative on behalf of

Wells Fargo as servicer for HSBC.[10]  The defendants have opposed

the admissibility of those affidavits on the grounds that Viers

is not qualified to testify (a) because she has no personal

knowledge of any facts concerning the plaintiffs' interest in the

Fremont Note, and (b) because one of Viers's answers to the

defendants' post-hearing interrogatories contradicts her

affidavit testimony.  For reasons that follow, the court rejects

these arguments and the objection to the admissibility of the

Viers affidavits is overruled.

According to her affidavits, Viers's testimony is based upon

her review of the records of Wells Fargo as servicer for HSBC,

kept in the course of regular business as the records pertain to

3721 Grant Place, N.E., Unit B, Washington, D.C. 20019.  The

defendants complain that Viers's affidavits are inadmissible

because Viers lacks personal knowledge of the facts to which she

testifies.  Federal Rule of Civil Procedure 56(e) (as in effect

in 2008), made applicable to these proceedings by Fed. R. Bankr.

---

[10]  The first affidavit is dated September 26, 2008, and was
filed as an exhibit to the *Plaintiffs' Motion for Summary
Judgment as to Whether Substituted Parties are Real Parties in
Interest (*Dkt. No. 176).  The second affidavit is dated September
30, 2008 (Dkt. No. 177), and was filed to supplement the
September 26, 2008 affidavit.  The third affidavit is dated
October 27, 2008, and was filed as an exhibit to the plaintiffs'
Opposition (Dkt. No. 182) to the *Defendants' Motion to Dismiss or
in the Alternative for Summary Judgment* (Dkt. No. 180).    The
affidavits are also attached as exhibits M, N, & O to the
*Plaintiffs' Response to Defendants' Supplemental Memorandum* (Dkt.
No. 225).

P. 7056, provides that "[a] supporting or opposing affidavit must
be made on personal knowledge, set out facts that would be
admissible in evidence, and show that the affiant is competent to
testify on the matters stated. . . ."[11]    It is, however,
"axiomatic that a corporate representative may testify and submit
affidavits based on knowledge gained from a review of books and
records." *Philbrick v. eNom, Inc.*, 593 F. Supp.2d 352, 364
(D.N.H. 2009) (quoting *Harrison-Hoge Indus., Inc. v. Panther
Martin S.R.L.*, 2008 WL 905892 (E.D.N.Y. March 31, 2008)
(rejecting argument that corporate representative's affidavit in
support of summary judgment motion ought to be stricken based
upon affiant's lack of personal knowledge)).    Viers makes clear
that she is testifying in her capacity as a corporate
representative and that her testimony is based upon her review of
corporate records.    Her affidavits are thus admissible
notwithstanding the "personal knowledge" requirement of Rule
56(e).    Likewise, Fed. R. Evid. 803(6) provides a business
records exception to the hearsay rule, rendering admissible
certain business records offered by way of a corporate
representative's affidavit.    Thus, it was proper for the
plaintiffs to seek admission of various exhibits through the

---

[11]    The Rules were amended in 2010, and the requirement that
an affidavit be made on personal knowledge, which was previously
found in Rule 56(e), was moved to Rule 56(c)(4).

Viers affidavits.[12]

### C.   Facts Established by the Viers Affidavits

Having concluded that the Viers affidavits are admissible, the court finds, based on those affidavits, that the following facts are not reasonably in dispute.  On March 24, 2006, SG Mortgage Securities, LLC, Wells Fargo, and HSBC Bank USA, NA entered into a Pooling and Servicing Agreement (Dkt. No. 176-3). HSBC Bank USA, NA is the Trustee for the SG Mortgage Securities Trust 2006-FRE1 established by SG Mortgage Securities LLC as depositor and Wells Fargo is the custodian, servicer, master servicer, and securities administrator.  On August 15, 2006, Mortgage Electronic Registration Systems, Inc., as nominee for

---

[12]   In response to the interrogatories posed to Viers by Smith, Viers acknowledges an inaccuracy in her affidavits (Dkt. No. 224-10).  Specifically, Viers states in answer to interrogatory No. 23:

> I incorrectly stated that HSBC Bank USA, NA purchased the note from Fremont Investment & Loan as HSBC Bank USA, NA is merely the Trustee for SG Mortgage Securities Trust 2006-FRE1.  I have subsequently spoken to our Client Services Department.  They have informed me that the Stevenson Note was sold to SG Mortgage Finance Corporation on January 26, 2006.  It was subsequently sold on May 11, 2006 to SG Mortgage Securities, LLC.  At which time, it was placed into the SG Mortgage Securities Trust 2006-FRE1 to be securitized effective with the June 1, 2006 payment.

This statement is inadmissible hearsay, and cannot be offered to establish the facts asserted therein.  Nevertheless, the court will accept Viers's statement for the limited evidentiary purpose of modifying Viers's prior affidavit testimony to reflect that it is not Viers's position that HSBC Bank USA, NA purchased the note.

Fremont, assigned and transferred to HSBC, all its rights, title
and interest in the Fremont Deed of Trust executed by Debra
Stevenson on December 9, 2005.  The Fremont Note executed by
Debra Stevenson on December 9, 2005 in the amount of $135,000.00
was endorsed to HSBC, and that Fremont Note is part of the pool
of loans serviced by Wells Fargo through the Pooling and
Servicing Agreement dated March 24, 2006.  A copy of the endorsed
Fremont Note (Dkt. No. 182-3) is attached to Viers's Supplemental
Affidavit of October 27, 2008 (Dkt. No. 182-4), and was filed and
served on the defendants on October 28, 2008.

> D.   The Bankruptcy Court's Allowance of Further
>      Discovery and a Supplemental Response to the
>      Plaintiffs' Motion for Summary Judgment on the
>      Real Parties in Interest Issue in Light of the
>      Belated Production of the Fremont Note

The plaintiffs had not produced the original Fremont Note
for examination by the defendants prior to disclosing it as part
of their filing of October 28, 2008 (Dkt. No. 182-3).  At a
November 12, 2008 hearing to address the plaintiffs' motion for
summary judgment on the real parties in interest issue, the
plaintiffs produced what the plaintiffs represented to be the
original of the Fremont Note which included, on the back of page

3 of the note, an endorsement of the note to HSBC.[13]   The
plaintiffs' attorney expressly noted, in open court and for the
record, that he had with him the Fremont Note bearing an original
endorsement, and he showed the endorsed Fremont Note to the
defendant Smith.  At the hearing, Smith objected to the
timeliness of the production of the endorsed Fremont Note, but
did not challenge the plaintiffs' representation that the
document was an original document, nor did he challenge the
authenticity of the endorsement appearing on the document.

At the hearing of November 12, 2008, the bankruptcy court
overruled the objection that the production of the endorsed
Fremont Note was untimely.  Bearing in mind the delay in the
plaintiffs' production of the original of the endorsed Fremont
Note until the November 12 hearing, however, the bankruptcy court
agreed to permit the defendants certain limited additional
discovery.  After a brief discussion on the record as to what

---

[13]   The plaintiffs represented in Dkt. No. 182 at 4 that
"[t]he back of page 3 of the note (copied as page 4) indicates
that the Note was endorsed to 'HSBC Bank USA, National
Association, as Trustee for SG Mortgage Securities Trust
2006-FRE1.'").  At the later hearing of November 12, 2008, and in
their supplemental memorandum (Dkt. No. 224) filed later, the
defendants have not challenged the representation that the
endorsement appears on the back of page 3 of the note.  It would
not matter whether the endorsement appeared on a separate page.
Specifically, the Uniform Commercial Code ("U.C.C.") (codified in
D.C. Code §§ 28:1-101, et seq.) provides in § 3-204(a) (D.C. Code
§ 28:3-204(a)) that "[f]or the purpose of determining whether a
signature is made on an instrument, a paper affixed to the
instrument is a part of the instrument."

form of additional discovery the defendants desired and what
would be permitted, it was decided that the defendants would pose
written interrogatories, to be answered by Amy Viers, whose
affidavits were submitted in support of the plaintiffs' motion.
The defendants did not request discovery beyond that.[14]

At the November 12, 2008 hearing, the court set a deadline
for the defendants to file a supplemental response to the
plaintiffs' motion for summary judgment on the real parties in
interest issue, and an Order entered on December 1, 2008 (Dkt.
No. 217) memorialized that deadline.  The defendants filed a
supplemental memorandum on December 29, 2008, but failed to file
any affidavits in opposition to the plaintiffs' motion for
summary judgment.

---

[14]  At the hearing of November 12, 2008, the defendant Smith
expressly declined to take the deposition of Amy Viers, deeming
it cost prohibitive.  In their supplemental memorandum, the
defendants complain that Amy Viers does not have personal
knowledge regarding the endorsed Fremont Note.  The extent of Amy
Viers's direct personal knowledge regarding the endorsed Fremont
Note is entirely consistent with her previously disclosed
position as a litigation representative assigned to review and
report on the records maintained by a corporate entity not
capable of testifying on its own behalf.  If the defendants
sought discovery beyond interrogatories posed to Amy Viers, they
had an opportunity to request such additional discovery at the
November 12, 2008 hearing.  The court thus does not consider it
appropriate to allow the defendants additional discovery based
upon Viers's lack of personal knowledge regarding the endorsed
Fremont Note.

E.   The Defendants' Supplemental Memorandum Failed
     to Establish a Genuine Dispute of Material
     Fact Regarding the Authenticity of the
     Endorsed Fremont Note

In their supplemental memorandum filed on December 29, 2008,

the defendants for the first time contended that:

> [The] Plaintiffs have not produced the original Fremont
> Note purportedly endorsed by [Fremont].  On November 12,
> 2008, Plaintiffs' counsel represented to Smith and the
> Court that a copy of the Fremont Note to Court which had
> purportedly been endorsed by [a Fremont] representative
> to HSBC was the original.  The version that Plaintiffs'
> counsel presented to Smith and the Court was, however, a
> copy and not an original of the Fremont Note as evidenced
> by the photocopied signature of the [Fremont]
> representative.

Def's Supp. Mem. at 4, ¶ 13 (Dkt. No. 224).  The memorandum

further states that "the note that Plaintiffs have produced is

not an original and bears no date or certification to determine

when it was endorsed."  Def's Supp. Mem. at 6.  In contravention

of Fed. R. Civ. P. 56(e)(2) (as in effect in 2008), the

defendants neglected to include an affidavit with their

memorandum in support of their contention that the endorsed note

produced at the November 12 hearing was not an original.  *See*

*Johnson v. McNeil*, 278 Fed. Appx. 866, 870-71 (11th Cir. 2008)

(failure to include affidavit severely undermined claim and

violated Fed. R. Civ. P. 56(e)(2) "which requires a party to

respond with affidavits of its own when a properly made motion

for summary judgment includes affidavits.").

To the extent that the defendants' argument was that summary

19

judgment is inappropriate because the plaintiffs have never
complied with their obligation in discovery to produce the
original note, that argument must be rejected.  At the hearing of
November 12, 2008, the defendants were allowed to examine the
endorsed Fremont Note (a photocopy of which had been appended to
the plaintiffs' October 28, 2008 filing as Dkt. No. 182-3), and
they did not contend that what the plaintiffs produced was not
the original Fremont Note such that the plaintiffs had still
failed to comply with their obligation to produce the original
Fremont Note.  It is too late for the defendants to contend that
the plaintiffs failed to produce the original Fremont Note.
Moreover, the defendants' argument fails under Fed. R. Civ. P. 56
because their supplemental memorandum failed to point to any
evidence supporting their contention that what the plaintiffs
produced for examination at the hearing of November 12, 2008, was
not the original Fremont Note.

    To the extent that the defendants' argument was that the
plaintiffs were required to submit the original endorsed Fremont
Note, instead of a photocopy,[15] in support of their motion for
summary judgment, that argument also fails.  Fed. R. Evid. 1003
(as in effect in 2008) provides that "[a] 'duplicate' is

---

[15]  On October 28, 2008, the plaintiffs had submitted in
support of their motion for summary judgment a *Supplemental
Affidavit of Amy Viers* (Dkt. No. 182-4) that attached a copy of
the endorsed Fremont Note (Dkt. No. 182-3).

admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."[16]  Under Fed. R. Civ. P. 56, the defendants were required to submit an affidavit or point to other evidence in the record supporting their argument under Rule 1003, but failed to do so.  Accordingly, the defendants' supplemental memorandum raised no genuine question as to the authenticity of the original endorsed Fremont Note, and did not otherwise show any reason why it would be unfair for the court to admit the duplicate in lieu of the original.  The defendants were allowed to take further discovery in light of the belated production of the endorsed Fremont Note at the hearing of November 12, 2008, and the supplemental memorandum pointed to no evidence that would warrant treating the photocopy as inadmissible.

     F.   The Defendants' Attempt, via Their *Motion for Leave to File a Reply Brief to the Plaintiffs' Response to the Defendants' Supplemental Memorandum*, to Submit Smith's Untimely <u>Supplemental Declaration  Must be Rejected</u>

The plaintiffs' response of December 31, 2008, to the defendants' supplemental memorandum argued that the defendants had failed to present or point to any evidence to support their contention that the Fremont Note produced at the November 12,

---

[16]  Rule 1003 was amended in 2011 to make certain non-substantive stylistic changes.

2008 hearing was not an original document.  On January 3, 2009,
the defendants filed *Defendants' Motion for Leave to File Reply
to Plaintiffs' Response to Defendants' Supplemental Memorandum*,
attaching the reply they sought to file (Dkt. No. 226).  The
*Reply* attached a supplemental declaration of Smith in support of
the assertion that the Fremont Note that was produced on November
12, 2008, was not the original Fremont Note. The *Motion* alleged:

> 1. The Plaintiffs, through the recent testimony of
> Amy Viers and other exhibits belatedly filed, have
> introduced new evidence which the Defendants have not had
> the opportunity to previously address.  In particular,
> one piece of new evidence suggests that Fremont sold
> Stevenson's mortgage loan on January 26, 2006 prior to
> perfecting its mortgage on Subject Property.
> 2. The Defendants should be allowed to file a reply
> to Plaintiffs' response as would be the normal procedures
> for motions.

The *Motion* alleges no basis for establishing that, based on
excusable neglect, the defendants should be allowed to submit
Smith's supplemental declaration out of time.  Moreover, the
court's order allowing the filing only of the defendants'
supplemental opposition and the plaintiffs' reply thereto was
entirely consistent with "normal procedures" as evidenced by LBR
9013-1 (providing for only an objection to a motion and a reply
to the objection).  Accordingly, the court denies the request to
consider Smith's untimely supplemental declaration.

The court is mindful of precedent in this circuit requiring
courts to give special consideration to a party's status as a pro
se litigant.  *See e.g., Malik v. District of Columbia*, 574 F.3d

22

781 (D.C. Cir. 2009) (holding that the district court was
required, under the circumstances, to give the pro se plaintiff
an 'explanation of the risks attending failure to respond' to the
defendants' motion for summary judgment).  Indeed, the bankruptcy
court on numerous occasions permitted the defendants to file
documents out of time and to correct otherwise fatal procedural
defects in their filings based upon the defendants' status as pro
se litigants.  It is one thing to give additional leeway to a pro
se litigant not trained in the law,[17] it is, however, entirely
another to give a pro se litigant license to repeatedly disregard
the Federal Rules of Civil Procedure notwithstanding that

---

[17]  Stevenson is not an attorney, but the claim for
equitable subrogation has been asserted by the plaintiffs in
order to reach Smith's interest in the property; the Fremont Loan
was already enforceable against Stevenson's interest in the
property.  In any event, Smith, an attorney, is Stevenson's son
and has been obviously acting on her behalf.

litigant's training as a licensed attorney.[18]  The defendants

having failed to include an affidavit in support of their

allegation that the plaintiffs failed to produce the original of

the Fremont Note, the court rejects the unsupported contention

that the endorsement is not an original.

> G.  Even if the Court Were to Allow the Filing of
> Smith's Untimely Supplemental Declaration,
> That Document Does Not Defeat the Plaintiffs'
> <u>Motion for Summary Judgment</u>

Even if the court were to take into account Smith's

supplemental declaration submitted as part of the defendants'

reply brief (Dkt. No. 226), that declaration fails to raise a

genuine issue of material fact as to the authenticity of the

Fremont Note (filed as Dkt. No. 182-3), including the signatures

---

[18]  Smith is a licensed attorney, a fact supported by his
deposition testimony.  *See* Exh. 3 to *Opp. to Defs' Motion to File
Motion Beyond Scheduling Order Deadline* (Dkt. No. 45) (Smith
testified that he is an attorney with the U.S. Commodity Futures
Trading Commission).  It is inappropriate to disregard Smith's
training as an attorney and treat him as an unsophisticated pro
se litigant.  Smith has repeatedly complicated this litigation by
failing to comply with the Federal Rules of Civil Procedure and
the Local Bankruptcy Rules applicable in the bankruptcy court.
Perhaps the most extraordinary example of Smith's failure to
comply with the Rules was his failure to file an answer to the
complaint until June 30, 2008 (Dkt. No. 142), more than one year
after the filing of the complaint.  At this advanced stage of the
litigation, the court finds it appropriate to require Smith, like
his adversary, to comply with the rules of procedure, including
the requirement timely to file an affidavit in support of
evidence offered in opposition to a motion for summary judgment.
Accordingly, the court will deny the defendants' motion for leave
to file a reply to the extent it was intended as a vehicle for
introducing an untimely affidavit in support of the defendants'
supplemental memorandum.

on the note.[19]

A promissory note, including its endorsements, is self-authenticating.  Fed. R. Evid. 902(9) (stating that extrinsic evidence is not required to demonstrate the authenticity of "[c]ommercial paper, signatures thereon, and documents relating thereto to the extent provided by general commercial law").[20]  *See United States v. Carriger*, 592 F.2d 312, 316 (6th Cir. 1979) (promissory notes were self-authenticating, and "no testimony was

---

[19]  As a practical matter, moreover, the court observes that the defendants' suggestion that the endorsement is not authentic, but rather a forgery or an altered document, paints a bizarre and unlikely picture of a conspiracy on the part of HSBC, Wells Fargo, and First American, to defraud some unidentified entity of its right to enforce the Fremont Note, while at the same time having to engage in time and resource-consuming litigation to judicially cure a defect as to this lien that, according to the defendants, is not enforceable by any of the plaintiffs.  That is not to say that senseless fraud never occurs, but it is not the norm.  It is noteworthy that through the debtor's confirmed plan in the bankruptcy case, the debtor made payments on the Fremont Note to an agent for Wells Fargo without objecting in the main case that Wells Fargo (who acts as HSBC's servicer) was not entitled to receive the payments.

That said, the practice of mortgage securitization has created what can best be described as a shell game as to the plaintiffs' respective interests in the Fremont Note.  It has invited confusion into this litigation and has made it more difficult for the court to sort through the issues in this proceeding.  Even the plaintiffs had difficulty producing documentation to support their asserted rights in the Fremont Note, a circumstance that can likely be explained by the pooling of the Fremont Note with other like instruments.  The fact that the plaintiffs experienced such difficulty, however, does not render their ultimate production of the Fremont Note bearing an endorsement to HSBC a fraud.

[20]  This Rule was amended in 2011 to make certain non-substantive stylistic changes.

required to establish the genuineness of the signatures on the notes"). The production of the Fremont Note shifted the burden to the defendants to present evidence disputing the presumptive authenticity of the endorsed note. *Id.* at 316-17.

As explained below, Smith's supplemental declaration does not constitute such evidence. Accordingly, there is no reasonable basis upon which a finder of fact could find the endorsed Fremont Note not to be genuine. Smith's declaration states:

> The note [shown to Smith by Plaintiffs' counsel at the November 12, 2008 hearing] did not appear to contain the original signature of the Fremont representative, Michael Koch but rather appeared to be a photo copy of his signature, while parts of the endorsement to HSBC was in original blue ink.

So Smith's declaration asserts that two different types of ink appear on the endorsement and that Koch's signature appears to Smith to be a photocopy. Neither assertion is adequate to create a genuine issue of material fact.

1. The Different Colors of Ink Are Immaterial

That part of the endorsement page appears in black and part in blue ink is immaterial. The endorsement page of the Fremont Note (Dkt. No. 182-3) offered by the plaintiffs in seeking summary judgment included the following part:

26

**Pay to the order of** *
                    **without recourse.**
[The purported signature of Michael Koch]
**Fremont Investment & Loan**
      **Michael Koch**
      **Vice President**

All of the bolded parts, and the signature line, appear to have

been placed on the page using a rubber stamp; the asterisk and

the signature appear to be in ink.  A second part of the

endorsement page is the following:

    **\*HSBC Bank USA, National Association, as Trustee** for SG Mortgage
                                               Securities Trust
                                               2006-FRE1

The bolded part ("**HSBC Bank USA, National Association, as**

**Trustee**") appears to have been affixed using a rubber stamp.  The

asterisk and the words "for SG Mortgage Securities Trust 2006-

FRE1" appear to have been added in hand by ink.  It appears that

what may have occurred is that Koch caused his signature

(appearing in black) to be affixed to the signature line, and

then, either simultaneously or later, someone added the asterisk

to "**Pay to the order of * without recourse**" and added the second

part to indicate that the Fremont Note was now payable to HSBC

using (according to Smith) ink of a different color to add the

asterisk in front of "**HSBC Bank USA, National Association, as**

**Trustee**" and to add the words "for SG Mortgage Securities Trust

2006-FRE1."

If someone other than Koch completed the endorsement of the

Fremont Note after Koch's signature was affixed, that would be

27

neither improper nor unusual.  This follows because U.C.C.

§ 3-205 provides that an endorsement may be made in blank, which

endorsement consists only of a signature, but such blank

endorsement can be converted "into a special indorsement by

writing, above the signature of the indorser, words identifying

the person to whom the instrument is made payable."  U.C.C.

§ 3-205(c).  When a promissory note is "specially indorsed, [the]

instrument becomes payable to the identified person and may be

negotiated only by the indorsement of that person."  U.C.C.

§ 3-205(a).  Viers explains in her interrogatory responses that

"[i]t is customary at the time of loan acquisitions for the

promissory notes to [b]e endorsed in blank.  The notes are then

subsequently endorsed as needed."  Viers Answer to Interrog. 37

(Dkt. No. 224-10).

　　For all of the foregoing reasons, the different colors on

the endorsement create no genuine issue of material fact.

　　　　2.　　Smith's Conclusory Assertion That Koch's Signature
　　　　　　　Appears to be a Photocopy is Neither Competent
　　　　　　　Evidence Nor Material

　　Smith's conclusory assertion that Koch's signature appears

to Smith to be a photocopy is similarly not a basis for treating

the presumed authenticity of Koch's signature on the Fremont Note

(Dkt. No. 183-2) to be in genuine dispute.  *See Orix Fin. Servs.,*

*Inc. v. Thunder Ridge Energy, Inc.*, 2006 WL 587483, at *2 n.2

(S.D.N.Y. March 8, 2006) (conclusory affidavit stating that

28

affiant did not sign guaranty bearing her name held insufficient as a matter of law to rebut presumption that notarized signature was authentic).[21]

Even if Koch's signature had been shown by competent evidence to be a photocopy, that would not matter because the defendants have not offered any evidence to support a finding that Fremont's representative did not intend for the affixed signature to constitute a valid signature. Thus, Smith's assertion that one of the signatures of the endorsement appears to be a photocopy fails to create a triable issue of fact as to the authenticity of the endorsement.

There is no requirement that an original signature be affixed to a document by pen. *See McGrady v. Munsey Trust Co.*, 32 A.2d 106, 107 (D.C. 1943) ("In the absence of statutory direction as to the method of signing, we perceive no substantial difference between affixing one's name with a stamp or with a pen, when the intention is that such name constitute one's authentic signature."); *Weiner v. Mullaney*, 140 P.2d 704, 712 (Cal. Dist. Ct. App. 1943) ("An instrument is deemed signed

---

[21]   Beyond there being no competent evidence showing that Koch's signature is a photocopy, it is difficult to believe that Koch's signature on the backside of page 3 of the Fremont Note would have been placed there via putting page 3 of the original Fremont Note in the paper basket of a photocopier, then running the page through the photocopier to affix a photocopy of Koch's signature to the backside of page 3, and somehow causing that photocopied signature to line up with the signature line of the rubber stamp portion of the endorsement. The defendants' speculations have an air of unreality.

29

although the signature is typed, lithographed, rubber-stamped or

**printed**.") (emphasis added); *Blackburn v. City of Paducah,* 441

S.W.2d 395 (Ky. 1969) ("In legal contemplation the signing of an

instrument means attaching a name or causing it to be attached by

any of the known methods of impressing the name on paper with the

intention of signing it.  A rubber stamp impression may

constitute a signature.") (internal citations omitted); *Katz v.

Teicher*, 107 S.E.2d 250, 251 (Ga. Ct. App. 1959) (under Georgia

law, a negotiable instrument must be signed by the maker or

drawer, and to be valid, that "signature may be in one's

handwriting, or printed, engraved, lithographed or **photographed** .

. . .") (emphasis added).  Fremont's representative could have,

for example, affixed his signature to the document using a

signature stamp, which Smith might describe as a photocopy.  Even

if Koch had used a photocopy of an endorsement signed by him in

blank to affix to the Fremont Note, that would be the equivalent

of using a rubber stamp to affix his endorsement and would be an

effective signature.  The critical factor in an endorsement's

effectiveness is intent, and the defendants have not challenged

the intent of Michael Koch to endorse the Fremont Note.  No

effort was made to take Koch's deposition.

Smith is asking me to evaluate the character of a signature

based upon a self-serving allegation that lacks both evidentiary

support and specificity.  Smith raised no objection when he

30

examined the Fremont Note at the hearing before the bankruptcy court that the note and its endorsement were not originals.  Just because Smith has now come back and asserted that the signature is a photocopy does not persuade the court.  All the court has before it is Smith's unsubstantiated eleventh hour claim that the signature appears to be a photocopy.  If Koch affixed his signature to the page, whether by pen to paper or by using a signature stamp, or if he authorized the affixing of his signature to the page by use of a photocopy, and it was his intent to thus endorse the Fremont Note, the signature constitutes an effective signature.  In short, Smith's perception of the signature does nothing to inform the question of whether Mr. Koch affixed his signature or intended to affix his signature to the Fremont Note.

VI

Having concluded that HSBC and Wells Fargo are real parties in interest, the issue remains whether First American is a real party in interest.  It is, for the following reasons.

First American has established that it is, and continues to be, the title insurer in connection with the issuance of the

Fremont Note.[22]  Although First American does not claim a right
to enforce the Fremont Note, it is nevertheless a real party in
interest entitled to participate in this litigation.  This is not
an action to foreclose upon the mortgage; rather, it is an action
to subrogate the holder of the Fremont Note to the rights of the
lienholder whose note and deed of trust were discharged and
released incident to the Fremont Loan.  Liability stemming from a
defect in the lien arising incident to the Fremont Loan exposed
the title insurer to liability, and the title insurer has a
direct stake in the outcome of litigation seeking to cure that
defect.  It does not matter that First American is not the holder
of the Fremont Note and not entitled to enforce the Fremont Note.
The nature of the relief requested expands the universe of
potential real parties in interest beyond those that are entitled
to enforce the Fremont Note to include those parties that will be

---

[22]  The defendants contend that First American did not issue
title insurance to Fremont until January 31, 2006, after Fremont
transferred its interest in the subject property.  Thus,
according to the defendants, the insurance policy was a nullity.
The date of policy issuance does not determine whether First
American is liable as title insurer in connection with the
Fremont Loan.  In contrast, the evidence supports First
American's assertion that it is bound as the title insurer in
this transaction.  For example, line 1108 of the settlement
statement attached to the complaint reflects that First American
Title Insurance Company issued title insurance in connection with
the Fremont Loan, and Exhibit K to First American's motion for
summary judgment (Dkt. No. 36-13) includes a check issued by PSS
Title to First American Title Insurance Company, as title
underwriter to the Fremont Loan, on December 14, 2005.  The
defendants have not offered evidence that creates a genuine issue
of disputed fact as to First American Title's status as the title
insurer relative to the Fremont Loan transaction.

subject to increased liability arising from the defect in the lien.  The court finds that the holder of the Fremont Note is a necessary party to this action insofar as there is a need for the outcome of this adjudication to be binding on the holder of the Fremont Note, but that does not render the title insurer, who will be financially impacted by any uncured defect in the lien, without standing.

VII

The court will deny the *Motion for Leave to File a Reply Brief to the Plaintiffs' Response to the Defendants' Supplemental Memorandum*.  As noted in part V(F), above, the defendants have not alleged any grounds establishing excusable neglect warranting permitting them to further supplement their opposition to the plaintiffs' motion for summary judgment.

In any event, the *Reply* they seek to file raises no meritorious defense to the motion for summary judgment.  Part V(F), above, addressed why the *Reply* and Smith's supplemental declaration appended thereto failed to present a meritorious defense to the real parties in interest issue.  The remaining contentions the *Reply* raised are similarly unavailing.

A.   The *Reply's* invocation of Rule 56(f) is ineffective to justify not granting summary judgment to the <u>plaintiffs.</u>

The *Reply* noted that Smith's supplemental declaration "is being submitted pursuant to Federal Rules of Civil Procedure,

Rule 56(f)." *Reply* at 4 n.2 (Dkt. No. 226-2).  Rule 56(f) (the

version then in effect) provided:

> **When Affidavits are Unavailable.**  If a party opposing the
> motion shows by affidavit that, for specified reasons, it
> cannot present facts essential to justify its opposition,
> the court may:
> > (1) deny the motion;
> > (2) order a continuance to enable affidavits
> > to be obtained, depositions to be taken, or other
> > discovery to be undertaken; or
> > (3) issue any other just order.

Rule 56(f) is not a valid basis upon which to deny or delay

acting on the plaintiffs' motion for summary judgment.  The

defendants have not shown any reason why they could not have

filed a Rule 56(f) affidavit when they filed their supplemental

memorandum.  Moreover, Smith's supplemental declaration does not

allege that the defendants cannot present facts essential to

justify their opposition.  Instead, it sets forth his belief that

the signature endorsing the Fremont Note to HSBC *appears* to him

to be a photocopy.  In any event, the defendants have not

provided any justification for allowing further discovery when

the court already allowed further discovery at the hearing of

November 12, 2008, and the defendants agreed to limit that to

propounding interrogatories to be answered by Amy Viers.

> B.   The *Reply* adds nothing to the avoidability argument
> raised by the defendants' supplemental memorandum, and
> <u>that argument is frivolous and immaterial.</u>

In their *Reply*, the defendants contend that "new evidence"

raises the question of whether the Fremont Deed of Trust may be

avoided by the trustee's strong-arm powers under 11 U.S.C.
§ 544(a)(3), but the avoidability argument was already raised in
the defendants' supplemental memorandum.  As discussed below,
that argument is frivolous and immaterial.

VIII

In support of their argument that the Fremont Deed of Trust
is avoidable, the defendants assert that the Fremont Deed of
Trust was not perfected by Fremont until January 31, 2006,
several days after Fremont sold its interest on January 26, 2006.
The argument is immaterial because equitable subrogation would
apply even if there had been no executed deed of trust.
Moreover, the argument attempts belatedly to inject a new claim
into the proceeding without a showing of good cause to permit the
defendants to do so.

In any event, the argument is frivolous.  The argument is
that Fremont was too late recording its interest, that the
chapter 13 trustee, in the exercise of her avoidance powers,
would not be deemed on notice of the Fremont Deed of Trust and
"any other documents stemming from this improperly recorded
mortgage . . . ."  From this the defendants further conclude that
any interest the plaintiffs are found to have in the Fremont Note
ought to be declared unsecured.

The debtor and her co-defendant, Smith, lack the authority
to exercise the chapter 13 trustee's avoidance powers under 11

U.S.C. § 544.  *See In re Dawson*, 411 B.R. 1, 25 (Bankr. D.D.C. 2008) (citing cases).  Thus, even if the Fremont Deed of Trust at issue in this adversary proceeding were avoidable under § 544, the fact remains that the trustee did not bring an avoidance action and the Fremont Deed of Trust remains undisturbed.

Moreover, even if the defendants were entitled to exercise the chapter 13 trustee's avoidance powers under § 544, their argument in favor of avoidance lacks merit and is misplaced.  The defendants complain that the original Fremont Deed of Trust was not perfected until January 26, 2006, several days after Fremont sold its interest in the Fremont Note.  Section 544, however, addresses liens that remain unperfected as of the petition date, and as the defendants acknowledge, Fremont's perfection of its lien occurred more than seven months prior to the filing of the bankruptcy case.  There is no contention that any lien asserted in this adversary proceeding remained unperfected as of the petition date, and as such, § 544 is inapplicable.

The defendants appear to further argue, however, that Fremont's untimely perfection of its deed of trust created an incurable defect in the security interest granted by the deed of trust.  As such, all future holders of the Fremont Note were nothing more than unsecured creditors without an enforceable security interest in the Stevenson property.  This argument misconstrues the significance of perfection.  Perfection is a

36

device used to put other creditors and transferees on notice of
the lien holder's security interest.  Thus, had a creditor
obtained a security interest in Stevenson's property after
Fremont, but perfected that interest before Fremont perfected its
lien, the intervening creditor would have a valid argument that
it possessed a lien in the property superior in priority to
Fremont's lien.  Although a delay in perfecting a lien can alter
the relative priority of various creditors' liens, a delay in
perfecting the lien does not render the lien void, and Fremont's
Deed of Trust remained valid and enforceable as against Stevenson
notwithstanding any alleged delay in perfecting the lien.
Likewise, if a subsequent transferee of the Fremont Note properly
recorded the Fremont Deed of Trust, the validity of that lien
cannot be collaterally attacked by Stevenson on the basis that a
prior holder of the Fremont Note failed to record the deed of
trust.  Accordingly, the court rejects the defendants' argument
that the Fremont Deed of Trust ought to be avoided under § 544,
and likewise rejects the request to treat any interest asserted
by the plaintiffs to be unsecured.

IX

For all of these reasons, the court finds that the
plaintiffs are the real parties in interest to this dispute, and
that the plaintiffs are entitled to summary judgment in their
favor on the claim for equitable subrogtation with respect to the
$118,334.02 in secured obligations satisfied by the Fremont Loan.

37

As the bankruptcy court observed in its *Memorandum Decision re Cross-Motions for Summary Judgment*, the holder of the Fremont Note (determined to be HSBC) is entitled to recover interest on the $118,334.02 at the lesser of the interest rate on the Wells Fargo Note or the Fremont Note.  The Wells Fargo Note set a minimum interest rate of 6.5% per annum, a rate lower than the rate set by the Fremont Note.  The plaintiffs have consented to interest being paid at the 6.5% rate.  Accordingly, the court's judgment will decree that HSBC is entitled via equitable subrogation to enforce the Wells Fargo Note and the Wells Fargo Deed of Trust with respect to a debt of $118,334.02, with interest from December 14, 2005, at the rate of 6.5% per annum but with credit for any payments made on the Fremont Note after December 14, 2005.

X

   A judgment follows in accordance with the foregoing.

[Signed and dated above.]

Copies to: All counsel of record.